UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JACKIE L. SECREST, | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
|    *vs*. | ) | 1:09-cv-00708-JMS-RLY |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF THE SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
|    *Defendant*. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Jackie L. Secrest applied for Social Security Disability Insurance benefits ("DIB") on November 26, 2004. [R. 29.][1] After a series of administrative proceedings and appeals, including a hearing before Administrative Law Judge ("ALJ") Ann Rybolt, the agency denied Ms. Secrest's application. [R. 26-43.] Ms. Secrest then filed this action for judicial review of that denial.

## BACKGROUND[2]

**A. A Brief Overview**

Ms. Secrest's alleged disability onset date is June 12, 2003, the result of a fall from a forklift while at work. [R. 29 and 264.] The ALJ found that Ms. Secrest had the severe impairments of "depression and pain disorder associated with both psychological and physical

---

[1] Upon the written consent of the parties, this matter has been assigned to the magistrate judge for all proceedings, including for the entry of judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Pro. 73. [Dkt. 6.]

[2] Ms. Secrest devoted twenty-seven pages (out of a total of thirty-five) to her presentation of the record. The Commissioner devoted eighteen pages (out of a total of thirty-three) to his. Given the relatively narrow issues presented here, such a lengthy presentation was excessive—and, even more importantly, obscured the truly important facts. The Court strongly encourages counsel for both sides to present only those facts actually relevant to the legal issues presented, omitting the rest (or, if absolutely necessary, summarizing them at a high level).

factors; degenerative disk and joint disease of the cervical and lumbar spine; and degenerative joint disease of the right knee." [R. 32.] The medical evidence in the record amply supports that finding. She has seen a battery of doctors for physical impairments primarily related to head injuries and pain, including for headaches and migraines; cognitive problems such as concentration and memory; degenerative disk disease resulting in chronic cervical and lumbrosacral pain; and degenerative osteoarthritis of both knees. [R. 264-65, 292.] In addition to her physical impairments, Ms. Secrest also sought help for her mental health. The record is replete with evidence of Ms. Secrest's long battle with depression associated with her headache pain and other mental health difficulties. [R. 267, 281, 294-297, 312-321, 844, 1268.] While the medical evidence surrounding Ms. Secrest's physical and mental ailments is broad and deep, the facts vital to the specific arguments presented by counsel are confined to a narrow subset of events.

### B. Relevant Medical History

In December of 2003, Dr. Robert Gregori opined that although a number of previous doctors had found a "non-organic" basis to Ms. Secrest's symptoms, he believed that her symptoms were not "intentionally magnified," but were instead increased by her depression and anxiety. [R. 266.]

On January 28, 2004, Dr. Raymond Horn saw Ms. Secrest in a neuro-psychological assessment. [R. 264.] Dr. Horn concluded that Ms. Secrest was not malingering and that she was suffering from Major Depressive Disorder that played "a significant role both in the maintenance of her physical symptoms as well as in her experience of their severity and functionally disabling nature." [R. 270.] Dr. Horn felt that "it is very likely that there is a strong reciprocal interaction between these symptoms that has been exacerbated by her failure to

experience significant improvement." [*Id*.] However, Dr. Horn also noted that "[i]n spite of Mrs. Secrest's subjective sense of 'poor memory,' her actual psychometric performance on memory measures. . . was solidly within the average range." [R. 269.]

In a psychological evaluation a little less than a year later, Dr. Gregory Hale noted psychological testing indicated an "extreme number of vague somatic complaints." [R. 318.] Dr. Hale went on to opine that "many of [Ms. Secrest's] symptoms appear to be associated with somatic malingering; that is, the embellishment or magnification of somatic complaints above those of individuals who are more candidly describing existing physical problems." [*Id*.] Dr. Hale also pointed out that Ms. Secrest denied having a disability application with the Social Security Administration, while his office had previously "received a request for her psychological records from . . . SSA." [R. 315.] Similarly, Dr. W.F. Bastnagel, the state agency reviewing physician, observed that the severity of Ms. Secrest's symptoms and their alleged effect on her function were only "partially credible." [R. 261.]

In January of 2005, Dr. Carrie Dixon, a clinical psychologist, reviewed information provided by Ms. Secrest. [R. 294.] Dr. Dixon noted that Ms. Secrest reported occasionally communicating with friends and neighbors, enjoying walking and shopping, and performing daily living activities such as bathing, dressing, grooming, laundry, and occasional cooking. [R. 294-95.]

In a neurologic consultation in August of 2007, Dr. Nancy Frappier noted the role depression might play in Ms. Secrest's headaches. [R. 1058-59.] And in April of 2008, Dr. Corey Spangler concluded Ms. Secrest was not malingering. [R. 1278.]

Dr. Arthur Lorber saw Ms. Secrest on July 2, 2008 and noted a "probable exaggeration of symptomology, for secondary gain." [R. 689.] Dr. Lorber also opined that Ms. Secrest had a

3

positive Waddell's sign.[3]  [R. 687.]  Dr. Lorber observed that while Ms. Secrest initially permitted 90 degrees of abduction in her right shoulder, "when not under direct observation, it was at least. . .120 degrees."  [*Id*.]  Finally, Dr. Lorber reported that Ms. Secrest could vacuum, mop floors, go to restaurants once a week and drive to the pharmacy, grocery and hardware store.  [*Id*.]

A month later, in August of 2008, social worker Mr. Sheldon Shalley filled out and Dr. Olem Dzera approved a Psychiatric/Psychological Impairment Questionnaire concerning Ms. Secrest.  [R. 1287-94.]  Mr. Shalley and Dr. Dzera determined that many aspects of Ms. Secrest's concentration and ability to interact socially were "markedly limited," a conclusion reached after six months of bi-weekly treatment.  [R. 1287, 1290-91.]  They noted that Ms. Secrest was not a malingerer and that she could not "manage benefits in . . . her own best interest."  [R.1293-94.]  Mr. Shalley and Dr. Dzera concluded that Ms. Secrest would be absent from work more than three times a month as a result of her impairments.  [R. 1294.]

### C. The Administrative Hearing

At the administrative hearing, Ms. Secrest testified that she suffers severe headaches two or three times a week.  [R. 1321-22.]  In addition, Ms. Secrest testified that such headaches generally last between eight to ten hours and often require her to spend the entire day in bed.  [R. 1322.]  During the same hearing, Dr. James Brooks testified that "pain disorder with psychological and physiological factors" was a correct diagnosis of Ms. Secrest's condition.  [R. 1376-77.]  A vocational expert testified that an individual could not maintain unskilled work if the indiuvidual had to miss more than one day of work per month.  [R. 1390.]

---

[3] "Waddell signs are manifestations of pain resulting from specific maneuvers that should not induce back pain, and are used to identify patients reacting to 'psychosocial' factors, such as economics or social issues, including pending litigation." *Hilmes v. Barnhart*, 118 Fed. Appx. 56, 58 (7th Cir. 2004) (citations omitted).

In making her Residual Functional Capacity determination, the ALJ found Ms. Secrest could perform light work in the national economy. [R. 35.] In addition, the ALJ concurred with Dr. Brooks' testimony that Ms. Secrest could only perform simple repetitive tasks in her work. [*Id.*]

## STANDARD OF REVIEW

The findings and decision made by the ALJ will be affirmed if supported by substantial evidence. *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004) (citations omitted). Additionally, if the ALJ commits an error of law, "reversal is, of course, warranted irrespective of the volume of evidence supporting the factual findings." *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980). In the process of reviewing the decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (citation omitted). Substantial evidence is present if "a reasonable person would accept it as adequate to support the conclusion." *Id.* (citation omitted).

## DETERMINING DISABILITY

For the purposes of the Social Security Act, a "disability" means an "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is disabled if the impairments "are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To evaluate each claimant under these standards, an ALJ will utilize a five-step inquiry:

> (1) [is] the claimant . . . currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment . . . one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, . . . can she perform her past relevant work, and (5) is the claimant . . . capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).

## DISCUSSION

Ms. Secrest claims here that the ALJ improperly evaluated the opinions that Social Worker Shalley and Dr. Dzera offered. Second, she contends that the ALJ misjudged her credibility.

### A. The ALJ's Evaluation of the Opinions of Mr. Shalley and Dr. Dzera.

Ms. Secrest challenges the ALJ's decision to give "minimal weight," [R. 36], to a Psychiatric/Psychological Impairment Questionnaire that Mr. Shalley and Dr. Dzera jointly completed. There, they stated that Ms. Secrest's mental condition would cause her to be absent from work more than three times a month. [R. 1287-94.] In particular, they found various aspects of Ms. Secrest's sustained concentration and social interactions to be "markedly limited." [R. 1290-91.] They also expressed their belief that Ms. Secrest was not malingering or otherwise exaggerating her symptoms. [R. 1293.]

Under the Social Security Administration's regulatory scheme, the opinions and clinical findings submitted into the record by medical personnel are accorded different weight depending on the presence or absence of several factors. *See* 20 C.F.R. § 404.1527(d). One of the factors impacting the weight afforded to opinions is the length of time that the provider has provided treatment to the claimant; the longer the provider's treatment of the claimant, the stronger the opinion is. *Id.* at § 404.1527(d)(2)(i).

6

Because "the growth of managed health care in recent years and the emphasis on containing medical costs" means that "nurse practitioners, physician assistants, and licensed clinical social workers" are increasingly responsible for providing treatment, the Commissioner has determined that their opinions, formed after treatment rendered in their professional capacity, should generally be evaluated using the same considerations as are set forth in 20 C.F.R. § 404.1527(d).  SSR 06-03p.

In this case, the ALJ used an incorrect view of the facts to discount Mr. Shalley's and Dr. Dzera's opinions:  The ALJ believed that Mr. Shalley had only seen Ms. Secrest for treatment "on two occasions."  [R. 36.]  In actuality, the form containing Mr. Shalley's opinions and Dr. Dzera's concurrence clearly stated that the length of treatment had been "[e]very 2 weeks," between "2/6/08" and "8/4/08."  [R. 1287.]  The additional number of visits would have strengthened the weight potentially afforded to the opinions under the regulations, especially where, as here, the opinion of a non-physician treatment provider was endorsed by a physician, *see Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003) (discussing the "team approach" to mental health treatment).  That possibility that the ALJ may have decided to defer to these, more recent, opinions about Ms. Secrest's mental health over the older opinions in the file is substantial enough to preclude any conclusion that the ALJ's factual error constituted harmless error, *see Keys v. Barnhart*, 347 F.3d 990, 995 (7th Cir. 2003) (explaining that harmless-error analysis applies in the Social Security context).

Even had the ALJ chosen to discount the opinions under § 404.1527(d)(3) as merely inadequately supported (the record only contained notes from two treatment visits, [*see* R. 1253-

7

56] [4]), the Court still could not affirm the ALJ's findings about the weight due the opinions. Besides concluding that neither Mr. Shalley nor Dr. Dzera had not treated Ms. Secrest enough times to qualify as a "treating source" under § 404.1527(d)—a finding based upon the factual error described above—the ALJ otherwise made no attempt to assess their opinions through the framework set out in that regulation. That regulation provides five other factors to use when assessing the weight of medical opinions. But the ALJ discussed none of them, impermissibly preventing the Court from adequately analyzing the ALJ's decision, *see Dixon*, 270 F.3d at 1176 (explaining that although the ALJ is "not required to address every piece of evidence or testimony, …[the ALJ] must provide some glimpse into her reasoning...[and] must build an accurate and logical bridge from the evidence to her conclusion." (citations omitted)). A remand is thus required.

### B.  Ms. Secrest's challenge to the ALJ's credibility determination

The ALJ found that Ms. Secrest was "not credible to the extent that her capacity was so limited that she was unable to engage in substantial gainful activity consistent with [the ALJ's RFC determination]." [R. 42.] In short, the ALJ did "not find [Ms. Secrest's] allegations of pain, other symptoms, and functional limitations entirely credible" because "the . . . complaints of pain are out of proportion to the objective medical evidence" and there was evidence of possible malingering. [R. 40-42.]

The ALJ's assessment of a claimant's credibility is due "considerable deference" by the court. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). The court should only overturn an ALJ's credibility determination if it is "patently wrong." [*Id.*]

---

[4] During her administrative appeals, Ms. Secrest presented Mr. Shalley's notes from the remaining visits. [R. 701-30.] The Commissioner has argued, and Ms. Secrest has not disputed, that her failure to present the additional notes to the ALJ precludes those notes from forming the basis for a remand. [*See* Def.'s Br. at 29-30; Pl.'s Reply at 3.] However, they may be considered on remand.

8

Indeed, the credibility determination "can rarely be disturbed by a reviewing court," and may be overturned only if the ALJ "grounds [her] credibility finding in an observation or argument that is unreasonable or unsupported." *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) (citations omitted).

Ms. Secrest makes several arguments in an attempt to overcome the high hurdle applicable to the ALJ's credibility determinations. First, she claims that the ALJ selected and discussed physiological evidence that favored the ALJ's ultimate conclusion "without apparently considering the psychological evidence." [Pl.'s Brf. at 30-32.] Second, she claims that the ALJ improperly accused her of malingering without discussing all the relevant evidence. [*Id.*][5]

### 1. Whether the ALJ Considered Psychological Evidence

Contrary to Ms. Secrest's contention that the ALJ did not consider psychological evidence in making her credibility determination, the record indicates that the ALJ did in fact contemplate such evidence. For example, the ALJ concluded that one of Ms. Secrest's impairments was "depression and pain disorder associated with both *psychological* and physical factors." [R. 32 (emphasis added).] Although that discussion specifically occurred in the context of Step Two, it can, and does, demonstrate that the ALJ didn't ignore psychological evidence; the Court must read the ALJ's opinion as a whole, *e.g.*, *Buckhanon ex rel. J.H. v. Astrue*, 2010 U.S. App. LEXIS 1673, *12 (7th Cir. 2010) (collecting cases that "tidy packaging" isn't required for the ALJ's written decision because courts read them "as a whole and with common sense"). Moreover, in concurring with Dr. Brooks that Ms. Secrest suffered from depression, the ALJ noted that "a diagnosis of Pain Disorder Associated with Psychological

---

[5] The following discussion addresses the two arguments as made by Ms. Secrest. However, should the ALJ's increase the weight afforded to the opinions of Mr. Shalley and Dr. Dzera on remand, the ALJ may find Ms. Secrest's testimony more credible.

Features is appropriate since most of claimant's pain does not appear to have an organic basis." [R. 39.] And, as yet another example, the ALJ mentioned psychological evaluations and tests of Ms. Secrest by a series of doctors—including "a consultative psychological evaluation…by Carrie Dixon, Ph.D." [R. 38.]

### 2. The ALJ's Discussion of Evidence of Possible Malingering

Although Ms. Secrest argues in two respects that the ALJ improperly considered evidence relating to potential malingering, the Court does not agree.

First, citing case law that she contends establishes that an ALJ may not "play doctor" and draw an adverse inference from the mere presence of fewer than three Waddell's signs, *see Kirby v. Astrue*, 568 F. Supp. 2d 1225 (D. Colo. 2008), she assigns error to the ALJ's mention that Ms. Secrest had tested positive for one Waddell sign, [R. 40].

Assuming without deciding the correctness of Ms. Secrest's assessment of the law, the ALJ does not appear to have drawn any adverse inference from that passing reference to the Waddell sign. Instead, the ALJ presented it as part of an objective summary of Dr. Lorber's medical findings. To the extent, if any, that an error occurred regarding the Waddell's sign, the error was harmless and cannot form the basis for a remand, *Keys*, 347 F.3d at 995. As the Commissioner correctly notes, the ALJ had substantial other evidence to conclude that Ms. Secrest was less than fully candid when describing the extent of her limitations. The ALJ accurately reported that several doctors believed that she had embellished her symptoms. [R. 40-41; *accord* R. 261 (Dr. Bastnagel), 318 (Dr. Hale), 689 (Dr. Lorber).] Her allegations were, at times, inconsistent with previous self-reports. [R. 33-42.] Likewise, the presence of only mild restrictions in daily activities, [R. 32]—a finding not challenged here—likewise led the ALJ to conclude that her "described daily activities . . . are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," [R. 42].

10

As her second basis of error, Ms. Secrest claims that the ALJ failed to consider an opinion of Dr. Spangler in which he indicated that Ms. Secrest was not malingering. [R. at 1278.] But the ALJ did actually consider Dr. Spangler's opinion: The ALJ decided that it merited "minimal weight" because his assessments "[were] inconsistent with substantial evidence of record." [R. at 36.] When presented with conflicting physician assessments, the ALJ determines which assessment is more persuasive. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (citation omitted). Here, the ALJ did precisely that, and the ALJ's conclusions do not qualify, on the present record, as patently erroneous.

## CONCLUSION

Because the ALJ's opinion relied upon a factually inaccurate claim to discount the opinions of Mr. Shalley and Dr. Dzera, the Court **VACATES** the decision denying Ms. Secrest benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Further, the Court cautions the ALJ to be vigilant in her role as neutral decision maker. Specifically the Court expresses concern over the ALJ's comment that she is "conceding" that Ms. Secrest suffers from a severe mental impairment. [R. 34.] Concessions are generally made to an opponent. Ms. Secrest is not the ALJ's adversary.

05/21/2010

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution via CM/ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Joseph W. Shull
jshull@pngusa.net